Virginia SHARKEY

v.

George M. PRESCOTT et al.

No. 2009–316–Appeal.

Supreme Court of Rhode Island.

May 16, 2011.

Court judgment granting the motion of the defendant, George M. Prescott (defendant or Prescott), for summary judgment and dismissing the plaintiff's action alleging legal malpractice. The plaintiff argues that a grant of summary judgment in favor of the defendant was inappropriate because genuine issues of material fact exist about whether the statute of limitations barred the plaintiff's complaint. This case came before the Supreme Court for oral argument on January 31, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. Subsequent to our consideration of the parties' submitted memoranda and oral arguments, we are satisfied that cause has not been shown, and we proceed to decide the appeal at this time. For the reasons set forth below, we affirm the judgment in part and reverse it in part.

Neil P. Philbin, Esq., Peace Dale, for Plaintiff.

Melina J. Mannix, Esq., Warwick, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

The plaintiff, Virginia Sharkey (plaintiff or Sharkey), appeals from a Superior

**1.** Walter Sharkey died in 2002.

**2.** The trust since has been judicially terminated. Accordingly, the trust assets including principal and undistributed income were ordered distributed to Sharkey.

## I

### Facts and Travel

The plaintiff and her husband, Walter Sharkey, retained defendant to provide legal services in 1999 for the preparation of an estate plan.[1] Prescott accordingly established a trust indenture, known as "The Sharkey Family Trust," which the Sharkeys executed on July 9, 1999.[2] That same day, as relevant to this appeal, the Sharkeys signed quitclaim deeds prepared by defendant, which conveyed two lots of land (Lots 42 and 43) that the couple owned in Narragansett to themselves as trustees.[3]

**3.** According to plaintiff, a summer home is located on Lot 42, and Lot 43 is vacant. Prior to the lots becoming assets of the trust, title to Lot 42 was in both her and her husband's names, while title to Lot 43 was in her name alone. This was done to avoid common

In addition to Lots 42 and 43, the other trust assets included a brokerage account and the Sharkeys' marital home in Woonsocket. The terms of the trust provided that upon the death of either plaintiff or her husband, the trust estate was to be divided into two trusts: the "Marital Trust" and the "Residuary Trust." The marital trust was to contain the residence and a fraction of the remainder of the estate with the balance funding the residuary trust.

According to defendant, plaintiff visited his law office in July 2001 and "asked why both lots 42 and 43 had been transferred to the trust." In a letter dated July 19, 2001, which defendant said that he sent to plaintiff to memorialize their conversation about why the properties were placed in the trust, defendant concluded, "I see no reason for your complaint that I did something wrong in preparing and executi[ng] your estate plan." However, according to plaintiff, she did not receive this letter.[4] Indeed, plaintiff stated in her affidavit that she "did not complain to * * * Prescott in July 2001 that he had done anything wrong in preparing the estate plan" because she "did not know in 2001 that * * * Prescott had done anything wrong in preparing the estate plan."

On October 8, 2003, plaintiff met with a zoning official of the Town of Narragansett in preparation for the sale of Lot 43. The plaintiff maintained that, at this meeting, she learned that "because Lots 42 and 43 had been deeded into [the trust], the Town of Narragansett would consider both lots to have 'merged.'" Consequently, she was told that "Lot 43 could not be sold separately from Lot 42" However, plaintiff said

that the receipt of this information did not make her "aware that Lot 43 could have been kept out of [the trust] and in [her] separate ownership until" she was counseled to that effect by another attorney in December 2003. Therefore, she asserted that only then did she become "aware for the first time that * * * Prescott might have been negligent when he included in our estate plan the conveyance of both Lots 42 and 43 to [the trust]."

Additionally, according to plaintiff, after consulting a Citizens Bank representative in July 2006, she "became aware for the first time that * * * Prescott made a second mistake by setting up [the trust] so that" she was not able to get access to the principal of the brokerage account that was in the residuary trust. The plaintiff maintained that she and her husband informed defendant when discussing their estate plan that their priority was to provide for the surviving spouse. Because this directive was, in plaintiff's view, not adequately achieved, she "decided to sue * * * Prescott for legal malpractice."

Sharkey filed a complaint in Providence County Superior Court on October 3, 2006. She alleged that "defendant's conduct in advising the plaintiff and her husband to deed Lots 42 and 43 into the living trust was a breach of the defendant's duty to use reasonable care, skill, and diligence on behalf of the plaintiff." The plaintiff claimed that she was damaged as a result in the amount of $400,000, the approximate fair-market value of Lot 43. Sharkey also alleged that "defendant's conduct in drafting the Trust Indenture so as to deny [her] access to the principal in the Residuary Trust was a breach of the defendant's duty

ownership of the lots, which the Sharkeys understood would cause the titles to merge.

4.  The record also contains a second letter dated July 24, 2001, from Prescott to Sharkey, which states that he was enclosing with this

letter the trust instrument that he says she left at his office after their alleged meeting several days prior. The plaintiff likewise maintains that she did not receive this second letter.

to use reasonable care, skill, and diligence." The plaintiff said that she "sustained substantial financial loss" as a consequence of defendant's alleged breach of duty. Additionally, she requested equitable modification of the trust to afford her "maximum access to and control over principal from the Residuary Trust, while limiting that access and control only to the extent necessary to assure minimum tax liability." Finally, she petitioned the court for "[e]quitable cancellation of the deed that conveyed Lot 43 into [the trust]."

On May 22, 2009, defendant moved for summary judgment under Rule 56(b) of the Superior Court Rules of Civil Procedure on the basis that plaintiff's claims of legal malpractice against him were time-barred. The defendant argued that the action was brought outside of the applicable statute of limitations for legal-malpractice claims codified at G.L.1956 § 9–1–14.3 because plaintiff's action was commenced more than three years since the incidents giving rise to it occurred. The plaintiff argued in opposition to the motion that her complaint was not time-barred because under the "discovery rule" codified at § 9–1–14.3(2), the incidents of malpractice were not discoverable in the exercise of reasonable diligence at the time that they occurred and were discovered by plaintiff within the three years prior to the filing of her complaint. The motion was heard before a justice of the Superior Court on July 21, 2009.

After hearing the arguments of the parties and reviewing the pleadings, deposition testimony, and affidavits, the trial justice concluded that "plaintiff has failed to come forward with admissible evidence to demonstrate the applicability of the discovery doctrine." Therefore, the trial justice granted defendant's motion for summary judgment because plaintiff's action was barred under the statute of limitations for legal-malpractice actions. A judgment was entered on July 24, 2009, in favor of defendant. The plaintiff filed a timely notice of appeal.

## II

### Issues on Appeal

On appeal, plaintiff argues that the trial justice erred when she concluded that the discovery rule did not apply and granted defendant's motion for summary judgment on all plaintiff's claims. Specifically, Sharkey contends that "[a] plain reading of [her] affidavit and the attached exhibits reveals ample evidence to demonstrate outstanding issues of material fact that render summary judgment inappropriate." Therefore, the issues before this Court are whether the trial justice properly granted defendant's motion for summary judgment on plaintiff's claims that defendant committed legal malpractice when he advised the Sharkeys to deed both their Narragansett properties to the trust and when he drafted the trust so as to prevent the surviving spouse from accessing the principal of the residuary trust.

## III

### Standard of Review

"It is well settled that this Court reviews a hearing justice's grant of summary judgment *de novo.*" *Parker v. Byrne,* 996 A.2d 627, 632 (R.I.2010) (citing *Credit Union Central Falls v. Groff,* 966 A.2d 1262, 1267 (R.I.2009)). "We will affirm such a decision only if 'after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.'" *Prout v. City of Providence,* 996 A.2d 1139, 1141 (R.I.2010) (quoting *Lucier v. Impact Recreation, Ltd.,* 864 A.2d 635, 638 (R.I.

2005)). Conversely, "if the record evinces a genuine issue of material fact, summary judgment is improper and we will accordingly reverse." *Canavan v. Lovett, Schefrin and Harnett*, 862 A.2d 778, 783 (R.I. 2004) (citing *Belanger v. Silva*, 114 R.I. 266, 267–68, 331 A.2d 403, 405 (1975)).

## IV

## Discussion

■■■■ Upon our *de novo* review, this Court must determine whether defendant was entitled to summary judgment because plaintiff's allegations were time-barred or whether the discovery-rule exception to the three-year statute of limitations is applicable. Section 9–1–14.3 sets forth the three-year statute of limitations governing legal-malpractice actions.[5] However, this section also codifies the exception for "those injuries due to acts of legal malpractice which could not in the exercise of reasonable diligence be discoverable at the time of the occurrence of the incident which gave rise to the action, suit shall be commenced within three (3) years of the time that the act or acts of legal malpractice should, in the exercise of reasonable diligence, have been discovered." Section 9–1–14.3(2). The discovery-rule exception serves "to protect individuals suffering from latent or undiscoverable injuries who then seek legal redress after the statute of limitations has expired for a particular claim." *Canavan*, 862 A.2d at 783 (citing *Ashey v. Kupchan*, 618 A.2d 1268, 1269–70 (R.I.1993)). The standard applied to this exception is objective: it "requires only that the plaintiff be aware of facts that would place a reasonable person on notice that a potential claim exists." *Id.* at 784 (quoting *Riemers v. Omdahl*, 687 N.W.2d 445, 449 (N.D.2004)).

■■■ We emphasize that "[s]ummary judgment is an extreme remedy that should be applied cautiously." *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 57 (R.I.2010) (quoting *Johnston v. Poulin*, 844 A.2d 707, 710 (R.I.2004)). This procedural rule's utility "is to identify disputed issues of fact necessitating trial, not to resolve such issues." *Id.* at 58 (quoting *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I. 1996)). Mindful of the nature and purpose of a motion for summary judgment, we proceed to consider plaintiff's argument that, after viewing the evidence in a light most favorable to her, there are "outstanding issues of material fact that render summary judgment inappropriate."

## 1

## Alleged Malpractice Concerning Advice to Deed Both Lots to Trust

■■■ The plaintiff argues that summary judgment was not appropriate on count 1 of her complaint alleging that defendant committed legal malpractice when he advised plaintiff and her husband to deed both the lots that they owned in Narragansett to the trust because, under the discovery rule, this claim was not time-barred. The trial justice found that the discovery rule did not apply to this claim because "[t]here wasn't anything for the plaintiff to discover. It's undisputed that she understood what would happen if the two lots were committed to common ownership." The plaintiff argues that this characterization is "erroneous because it does not address the gravamen of the complaint, that the defendant negligently advised the plaintiff that all of her assets had to be

---

**5.** General Laws 1956 § 9–1–14.3 provides in pertinent part: "an action for legal malpractice shall be commenced within three (3) years of the occurrence of the incident which gave rise to the action."

conveyed to the trust." The plaintiff argues that, although she may have been aware of the merger of the title to the lots at the time the trust was executed, she "was unable to learn that the defendant should have informed her of another option until she had a meeting with another lawyer in December[ ] 2003."

After careful review of the record, we agree with plaintiff that her complaint alleged that defendant committed legal malpractice when he advised the Sharkeys to deed both lots to the trust not because plaintiff did not understand that the lots would then merge, but rather because he did not advise Sharkey and her husband that they could achieve their estate plan without causing the lots to merge. In her affidavit, Sharkey stated that she and her husband "deeded Lot 43 to [the trust] because * * * Prescott had advised [them] that in order to carry out our estate plan, all of our assets had to be conveyed to the trust." Viewing the complaint, depositions, and affidavits in a light most favorable to plaintiff as the nonmoving party, as we must, it is our opinion that the discovery rule does apply to this claim. This is so because, accepting as true plaintiff's statement that she "was not aware that Lot 43 could have been kept out of [the trust] * * * until after [she] met with [another attorney] in December[ ] 2003," there was a latent injury at the time the trust was executed.[6] *Cf. Richmond Square Capital Corp. v. Mittleman,* 689 A.2d 1067, 1068–69 (R.I.1997) (mem.) (holding that information available to the plaintiff at the time of the negligent act and for some time thereafter "was insuffi-

cient to alert the plaintiff that its attorneys had been negligent" and that on which date the plaintiff discovered the negligence in the exercise of reasonable diligence presented a genuine issue of material fact).

In determining whether, in the exercise of reasonable diligence, defendant's alleged legal malpractice was not discoverable until December 2003, we note defendant's contention, and plaintiff's denial, that she complained to him in July 2001 that he erred in preparing her and her husband's estate plan. The defendant maintains that Sharkey visited his office in July 2001 to inquire about the lot merger while Sharkey stated in her affidavit that she did "not believe that [she] had any meeting with [defendant] in 2001" and that she did not receive the letter defendant, in his own affidavit, stated that he wrote to her to confirm the meeting. Certainly these are material facts to be put into the mix at a preliminary evidentiary hearing at any time in advance of trial in determining when reasonable diligence would have put a person on notice that a potential claim existed. *See Cikan v. ARCO Alaska, Inc.,* 125 P.3d 335, 339 (Alaska 2005) ("[W]hen a factual dispute precludes entry of summary judgment the dispute must ordinarily be resolved by the court at a preliminary evidentiary hearing in advance of trial"); *Lopez v. Swyer,* 62 N.J. 267, 300 A.2d 563, 566, 567 (N.J.1973) (holding that the determination regarding the applicability of the discovery rule, though involving issues of fact, "should ordinarily be made at a preliminary hearing" before the judge rather than a jury). Having found the existence of genuine issues of material

---

**6.** Attached to her affidavit in support of her memorandum opposing defendant's motion for summary judgment is a letter from defendant dated July 13, 1999, informing plaintiff and her husband that "[n]ow that you have executed the [trust] I prepared for you, it is very important that you transfer all of your assets into the trust." The correspondence goes on to explain that the Sharkeys had "already transferred [their] real estate and tangible personal property into the trust" and that "[n]ow they should transfer all of [their] intangible personal property into the trust."

fact, we conclude that the trial justice erred when she granted the "extraordinary remedy of summary judgment" in defendant's favor on count 1. *Canavan*, 862 A.2d at 787.

## 2

### Alleged Malpractice Concerning Access to the Principal of the Residuary Trust

■ The plaintiff next argues that defendant committed legal malpractice when he drafted the trust so as to prevent the surviving spouse from accessing the principal of the residuary trust in contravention of plaintiff and her husband's desired estate plan to allow the surviving spouse to "spend[ ] the principal of their life savings." She contends that this claim was not time-barred because, under the discovery-rule exception, she could not have discovered the error in the exercise of reasonable diligence until July 2006, when she met with the bank representative. Even viewing the evidence in a light most favorable to plaintiff, however, we cannot say that a genuine issue of material fact exists about the application of the discovery rule to this claim. Therefore, we hold that count 2 of plaintiff's complaint was time-barred because it was brought more than three years after the trust was executed, and the grant of summary judgment on this count was proper.

■ Unlike count 1 of plaintiff's complaint alleging that defendant erred when he advised plaintiff and her husband to deed both their Narragansett lots to the trust without apprising them of the alter-

native option to prevent merger of the lots, this claim does not represent an injury that was "latent or undiscoverable" at the time of the execution of the trust. *See Canavan*, 862 A.2d at 783. Rather, accepting as true plaintiff's statement in her affidavit that she and her husband desired an estate plan that would afford the surviving spouse maximum access to the principal of the brokerage account, there is no genuine issue of material fact about whether this error was discoverable by plaintiff in the exercise of reasonable diligence at the time the trust was executed. It is undisputed that Sharkey reviewed and read the trust before she signed it and represented that she "accept[ed] the terms of [the] instrument." "[I]t has long been a settled principle that 'a party who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents.'" *Shappy v. Downcity Capital Partners, Ltd.*, 973 A.2d 40, 46 (R.I.2009) (quoting *Manchester v. Pereira*, 926 A.2d 1005, 1012 (R.I.2007)). She does not offer any reason why she could not effectively manifest assent to its terms. Any drafting error was clear on the face of the trust at the time it was signed.[7]

Therefore, following our *de novo* review, we agree with the trial justice that the discovery-rule exception does not apply to this claim because the alleged injury was not an "injur[y] due to acts of legal malpractice which could not in the exercise of reasonable diligence be discoverable at the time of the occurrence of the incident which gave rise to the action." Section 9–1–14.3(2); *cf. Ashey*, 618 A.2d at 1270

7. We are not persuaded by plaintiff's argument that accepting her signature as her manifestation of assent to the trust's terms "repeal[s] the discovery rule * * * with respect to estate planning malpractice if the client was given the opportunity to read the various instruments." In our view, the provisions of the residuary trust were not beyond the apprehension of lay people, and a reasonable person who read the trust and represented an understanding of its terms would be on notice that a potential claim of malpractice existed if these terms were contrary to his or her desires.

(holding that the discovery rule did not apply to the plaintiffs' claim in the context of medical malpractice because "[t]here [was] nothing undiscoverable about the injury or negligence"). Accordingly, count 2 of the plaintiff's complaint was time-barred because it was brought in 2006, more than three years after the trust was executed in 1999. As a result, no genuine issue of material fact exists and the defendant was entitled to summary judgment on this count as a matter of law. *See Ciambrone v. Coia & Lepore, Ltd.*, 819 A.2d 207, 211 (R.I.2003) (affirming grant of summary judgment because of the absence from the record of a genuine issue of material fact, but stressing that the Court was "careful in making this determination, fully cognizant that summary judgment 'is a drastic remedy to be granted sparingly' ") (quoting *Superior Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628, 631 (R.I. 1998)).

## V

### Conclusion

For the reasons stated in this opinion, we affirm the summary judgment entered in favor of the defendant on count 2 and vacate the judgment on count 1. The record shall be remanded to the Superior Court for proceedings in accordance with this opinion.

Justice GOLDBERG, concurring and dissenting.

I respectfully dissent from that portion of the majority's decision declaring that the discovery rule applies to count 1 of the plaintiff's complaint. The majority holds that the plaintiff adequately alleged that the defendant committed legal malpractice "not because [the] plaintiff did not understand that the lots would then merge, *but rather because he did not advise [the] plaintiff and her husband that they could*

*achieve their estate plan without causing the lots to merge.*" (Emphasis added.) I respectfully disagree with this holding and would affirm the trial justice's decision to grant summary judgment in favor of the defendant.

This Court has held that a "bald assertion that [factual issues] do exist is insufficient to place the [defendant] beyond the reach of summary judgment." *American Express Bank, FSB v. Johnson*, 945 A.2d 297, 300 (R.I.2008) (quoting *Egan's Laundry & Cleaners, Inc. v. The Community Hotel Corp. of Newport, R.I.*, 110 R.I. 719, 723, 297 A.2d 348, 351 (1972) (where the affiant merely stated that he was disputing charges but failed to put forth any evidence with respect to the amount he alleged was in dispute)); *see also People's Credit Union v. Berube*, 989 A.2d 91, 94 (R.I.2010) (Where the putative issue in dispute was whether the bank had accepted delivery of a deed and the defendant, "Berube[,] responded by filing an affidavit; however, the affidavit was from Berube herself, not from an employee of the credit union or anyone else who could shed light on whether the credit union accepted the deed or refused it. Berube's mere allegations [were] insufficient to rebut the affidavit offered by the credit union.").

In plaintiff's affidavit, she stated:

"7. [We] deeded Lot 43 to The Sharkey Family Trust because Attorney Prescott had advised [us] that *in order to carry out our estate plan,* all of our assets had to be conveyed to the trust.

" * * *

"17. I was not aware that Lot 43 could have been kept out of The Sharkey Family Trust and in my separate ownership until after I met with Attorney Donald Packer in

December, 2003." (Emphasis added.)

I do not consider this self-serving affidavit sufficient to overcome summary judgment on the crucial question of the statute of limitations, such that plaintiff is entitled to rely upon the discovery rule. The plaintiff asserts—but fails to offer even a scintilla of evidence—that the estate plan could have been accomplished without placing lot 43 in the trust. She has failed to produce any evidence relating to the goals of the estate plan or, indeed, how those goals could have been achieved without conveying lot 43 to the trust. Moreover, and determinatively for me, she has failed to produce any evidence indicating that she or her late husband would have acted differently if this unknown estate scenario had been realized.

In granting summary judgment, the trial justice correctly held:

"[I]f the discovery is * * * 'I didn't find out until later that I didn't have to do this,' then she hasn't, in her affidavit, come forward with admissible evidence to demonstrate some genuine dispute about that such that she's entitled to the benefits of the discovery doctrine.

" * * *

"Even giving her credit for not having discovered the other options available to her and her husband until she visited Attorney Packer, plaintiff has failed to demonstrate the applicability or relationship of that discovery to some claim that she would have acted differently had she not been the victim of the described negligence." (Emphasis added.)

I agree with this finding.

The majority also notes that the disputed issue of whether the plaintiff visited with Attorney Prescott in 2001 to discuss her concerns about the lot merger, as the defendant contends was memorialized by the 2001 letter from the defendant, is a "material fact[ ] to be put into the mix at a preliminary evidentiary hearing at any time in advance of trial in determining when reasonable diligence would have put a person on notice that a potential claim existed." Although I remain convinced that the grant of summary judgment on count 1 should be affirmed, I concur in the majority's determination that the crucial question of whether in 2001, the plaintiff visited with Attorney Prescott to discuss her concerns about the merged lots, is a material fact—indeed a dispositive fact in my opinion—to be decided by the trial justice at a preliminary evidentiary hearing. *See Hanson v. Singsen*, 898 A.2d 1244, 1248 (R.I.2006) (where the Court held that "[t]he application of the statute of limitations is a matter of law for the trial justice to determine") (quoting *Ashey v. Kupchan*, 618 A.2d 1268, 1270 (R.I. 1993)). This Court has held that in certain instances, there will be preliminary questions of fact which should be decided by the trial justice. *See Hall v. Insurance Co. of North America*, 727 A.2d 667, 668 (R.I.1999) (holding that the question of whether due diligence was exercised "should be determined by a justice of the Superior Court as a preliminary issue preceding the determination of whether the statute of limitations had run prior to the addition of this defendant") (emphasis omitted); and *Roe v. Gelineau*, 794 A.2d 476, 481 (R.I.2002) (holding that "[b]efore making a final ruling on a motion for summary judgment * * * a motion justice may first need to find certain preliminary facts before moving on to decide the question of law, namely, whether the statute of limitations has run against a plaintiff").